NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HABAS SINAI VE TIBBI GAZLAR ISTIHSAL ENDUSTRISI A.S.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES LLC,**
*Defendants-Appellees*

---

2024-1158

---

Appeal from the United States Court of International Trade in No. 1:21-cv-00527-MMB, Judge M. Miller Baker.

---

Decided: July 29, 2025

---

NANCY NOONAN, ArentFox Schiff LLP, Washington, DC, argued for plaintiff-appellant. Also represented by JESSICA R. DIPIETRO, MATTHEW MOSHER NOLAN, LEAH N. SCARPELLI.

EMMA E. BOND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also

represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY; ALEXANDER FRIED, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

DANIEL SCHNEIDERMAN, King & Spalding LLP, Washington, DC, argued for defendant-appellee Cleveland-Cliffs Inc. Also represented by STEPHEN VAUGHN.

ROGER BRIAN SCHAGRIN, Schagrin Associates, for defendants-appellees Steel Dynamics, Inc., SSAB Enterprises LLC. Also represented by NICHOLAS J. BIRCH, SAAD YOUNUS CHALCHAL, CHRISTOPHER TODD CLOUTIER, ELIZABETH DRAKE, WILLIAM ALFRED FENNELL, JEFFREY DAVID GERRISH, LUKE A. MEISNER.

———————————

Before MOORE, *Chief Judge*, HUGHES and CUNNINGHAM, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Appellant Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.S. appeals a decision of the Court of International Trade sustaining the United States Department of Commerce's final determination in an administrative review of an antidumping duty order covering hot-rolled steel flat products from Turkey. *Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.S. v. United States*, No. 21-00527, 2023 WL 5985777 (Ct. Int'l Trade Sept. 14, 2023). Habaş, the sole mandatory respondent in the administrative review, provided Commerce with data regarding its home-market sales, and Commerce determined that Habaş's Turkish lira-denominated sales values were the only reliable sales data that could be reconciled with Habaş's financial records. As a result, Commerce used the lira values of Habaş's home-market sales to calculate normal value, resulting in the calculation of a final weighted-average dumping margin of 24.32 percent for Habaş. *Certain Hot-*

*Rolled Steel Flat Products From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018–2019*, 86 Fed. Reg. 47058, 47059 (Dep't of Com. Aug. 23, 2021). Because Habaş has not shown that Commerce exceeded its authority, and substantial evidence supports Commerce's valuation of Habaş's home-market sales in lira, we affirm.

I

On October 3, 2016, Commerce issued an antidumping order on hot-rolled steel from various countries, including Turkey. *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom*, 81 Fed. Reg. 67962 (Dep't of Com. Oct. 3, 2016). In 2019, Commerce initiated the third administrative review of the antidumping duty order on Turkey, *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 67712 (Dep't of Com. Dec. 11, 2019), and selected Habaş, "the exporter accounting for the largest volume of the subject merchandise that can reasonably be examined," as the mandatory respondent. J.A. 1100; *see also* J.A. 1102 (letter from Commerce transmitting Initial Questionnaire to Habaş).

Commerce's questionnaire requested data on Habaş's home-market sales and a detailed reconciliation of those sales with Habaş's reported financial statements. J.A. 1102, 1134–39. Habaş reported home-market sales in both U.S. dollars and Turkish lira and stated that Habaş and its customers negotiated sale prices in dollars. J.A. 1631–32. Habaş further reported, however, that only the lira-denominated prices were "booked into the accounting system since all accounting entries must be made in [lira], regardless of the transaction currency." J.A. 1632; *see also* Appellant's Opening Br. 24–28 (asserting that Turkish VAT regulations require companies like Habaş to report financial statements in lira); J.A. 3068–78

(asserting the same in brief to Commerce); J.A. 40 (Commerce acknowledging Habaş's argument to this effect).

In its preliminary results, Commerce determined that Habaş had only successfully reconciled its financial records to its lira-denominated prices. *Decision Memorandum for the Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments: Certain Hot-Rolled Steel Flat Products from the Republic of Turkey; 2018-2019*, 86 ITADOC 11227 (Feb. 24, 2021), J.A. 3011–3029 (*Preliminary Results Memo*). "Because the sales values in [lira] [we]re the only sale values that [could] be directly tied to the audited financial records," Commerce decided to calculate the normal value of Habaş's hot-rolled steel flat products by measuring Habaş's home-market sales in lira instead of dollars. *Id.* at J.A. 3024.

In August 2021, Commerce issued the final results of its administrative review. *Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2019*, 86 Fed. Reg. 47058 (Dep't of Com. Aug. 23, 2021), J.A. 46–48 (*Final Results*); *Issues and Decision Memorandum for the Final Results*, 86 ITADOC 47058 (Aug. 23, 2021), J.A. 33–45 (*Final Results Memo*). It continued to use the lira values of Habaş's home-market sales to calculate normal value, *Final Results Memo* at J.A. 40, and as a result, calculated a final weighted-average dumping margin of 24.32 percent for Habaş, 86 Fed. Reg. at 47059; *Final Results* at J.A. 47.

The *Final Results Memo* provided a detailed response to Habaş's concern that Commerce's methodological reliance on its lira-denominated sales values was "unlawful." *Final Results Memo* at J.A. 38. Commerce explained that "[h]aving an accurate sales reconciliation is a prerequisite for calculating an accurate weighted-average dumping margin," *id.* at J.A. 40, and that its "practice has been . . .

to use the sales value that can be reconciled to the company's audited financial statements," *id.* at J.A. 41. Though Habaş reported its home-market sales in both dollars and lira, Commerce found that it had only "accurately and completely" reconciled its home-market sales reported in lira. *See id.* at J.A. 40–41. Because Habaş had failed to provide data regarding the payment dates or applicable exchange rates for each invoice, the dollar prices on its invoices could not be reconciled with its payment data recorded in lira. *See id.* at J.A. 42 (reproducing Habaş's own admission that it "is not able to report the date of the receipt of payment on a transaction-specific basis because its information system does not link payments to invoices" (quoting J.A. 1628)). Citing as an example a sample home-market sale reported in dollars, Commerce found that "the USD-denominated price shown on the invoice has no connection with the ultimate payment." *Id.* Thus, Commerce determined that "only the [lira]-denominated sales values are reliable for calculating [normal value]." *Id.* at J.A. 41.

Habaş challenged Commerce's final results in the Court of International Trade, alleging that Commerce's valuation of its home-market sales in lira (1) was "arbitrary and unreasonable" and (2) distorted the calculation of the dumping margin applicable to Habaş. *Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.S. v. United States*, No. 21-00527, 2023 WL 5985777, at *2, *4 (Ct. Int'l Trade Sept. 14, 2023). The Trade Court rejected both contentions and sustained Commerce's final results. *Id.* at *1, *4. It found that Commerce's valuation relying on the currency values that were found to control home-market transactions was consistent with precedent, supported by substantial evidence, and did not result in any distortion to the margin calculations. *Id.* at *3–4. Habaş timely filed an appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II

"In reviewing the Trade Court's decision to affirm Commerce's final determination, we apply anew the Trade Court's standard of review; thus, we will uphold Commerce's determination unless it is unsupported by substantial evidence on the record, or otherwise not in accordance with law." *Saha Thai Steel Pipe (Pub.) Co. v. United States*, 635 F.3d 1335, 1340 (Fed. Cir. 2011) (internal quotation marks and citations omitted); *see also* 19 U.S.C. § 1516a(b)(1)(B)(i). The applicable "substantial evidence standard . . . require[s] a court to ask whether a reasonable mind might accept a particular evidentiary record as adequate to support a conclusion." *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999) (internal quotation marks and citations omitted).

## III

Habaş disagrees with how Commerce calculated normal value in the administrative review on appeal, but it does not show that Commerce's methodology was incorrect as a matter of law or unsupported by substantial evidence. The Tariff Act of 1930 defines "normal value" as "the price at which the foreign like product is first sold . . . for consumption in the exporting country [i.e., the home market]." 19 U.S.C. § 1677b(a)(1)(B)(i). Commerce's obligation in calculating a dumping margin is to undertake "a fair comparison . . . between the export price . . . and normal value." *Id.* § 1677b(a). In the record below, Commerce repeatedly indicated that it sought to achieve such a fair comparison by calculating normal value using only sales values which could be reconciled with financial records. *Final Results Memo* at J.A. 40–42; *see also* J.A. 1139. Habaş does not object to this aim or point to any authority prohibiting Commerce from determining which set of a respondent's sales data is more accurate.

We hold that Commerce's reliance on Habaş's lira-denominated sales to calculate normal value comports with

Commerce's statutory obligations. Furthermore, Commerce's finding that Habaş does not have payment records which can be reconciled with the dollar values on its invoices is substantial evidence supporting Commerce's preference for Habaş's lira values which *can* be reconciled.

Habaş contends that Commerce legally erred in failing to follow its precedent in similar cases where Commerce used a respondent's reported dollar-denominated sales prices to calculate the normal value of steel flat products from Turkey. Appellant's Opening Br. 9–18. As Commerce explained, "[t]he past cases cited by Habas are not analogous to this administrative review." *Final Results Memo* at J.A. 42. Significantly, the respondents in those cases were able to reconcile their reported dollar prices. For example, in the first administrative review of the antidumping duty order applicable to Habaş, Commerce used then-mandatory respondent Colakoglu's dollar-denominated prices because Colakoglu was able to reconcile the amount it was paid in lira with its dollar invoice prices by offering information on the date and specific exchange rate applicable to payments. *Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review of Certain Hot-Rolled Steel Flat Products from the Republic of Turkey; 2016-2017*, 84 ITADOC 30694, at cmt. 2, ¶ 38 (June 27, 2019). As a result, Commerce was able to verify that the "USD price controls" because "the buyer paid the [lira] equivalent amount of the USD price at the time of payment." *Id*. Similarly, in Commerce's final determination of its investigation of cold-rolled steel flat products from Turkey, Commerce used "USD prices instead of [lira] prices" where it found that the USD price on the invoice, and not the lira price, controlled the final price between the parties. *Issues and Decision Memorandum for the Antidumping Investigation of Certain Cold-Rolled Carbon Steel Flat Products from Turkey; Notice of Final Determination of Sales at Less Than Fair Value*, 67 ITADOC 62126 at cmt. 1 (Sept. 23, 2002).

As the Trade Court explained, Commerce "would have acted inconsistently with its precedent only if Habaş's home-market sales were negotiated in dollars *and* the dollar price ultimately controlled the amount paid." *Habaş,* 2023 WL 5985777 at *3 (emphasis in original). Habaş may have negotiated prices in dollars and put dollar prices on its invoices, but Commerce made a factual finding that Habaş could not demonstrate that its dollar prices controlled the price it was paid for home-market sales. *See Final Results Memo* at J.A. 42–43 (finding that, to the contrary, Habaş's dollar-denominated prices had "no connection with the ultimate payment"). Though Habaş insists that its dollar prices *did* control, the fundamental problem is that Habaş "does not know the payment date of each invoice." *Id.* at J.A. 42. As such, no one could discern the exchange rate that was in effect at the time of each payment, and Habaş was unable to reconcile its lira-denominated payment records with its reported dollar prices. *Id.* This is substantial evidence supporting Commerce's choice to calculate a dumping margin using Habaş's lira-denominated prices—for which Habaş offered a complete reconciliation with its financial statements—instead. *See id.* at J.A. 41–42

Habaş also asserts that Commerce's reliance on lira-denominated sales values "introduce[d] an extraordinary distortion to the margin calculations." Appellant's Opening Br. 29–30. Per 19 U.S.C. § 1677b-1(a), Commerce's calculation of normal value involves "convert[ing] foreign currencies into United States dollars using the exchange rate in effect on the date of sale of subject merchandise." Habaş complains that it conducts sales in dollars to avoid the impact of Turkey's "volatile exchange rate," Appellant's Opening Br. 25, but ignores that only its lira-denominated prices were found to be reliable and thus had to be converted. Habaş does not suggest that Commerce failed to comply with § 1677b-1(a) or otherwise applied the incorrect exchange rate, but it does characterize Commerce as having

introduced distortions by converting its "USD-denominated price from U.S. Dollars to Turkish Lira and back again to U.S. Dollars[.]" Appellant's Opening Br. 30. As the Trade Court explained, that characterization is incorrect because Commerce "directly relied on Habaş's reported [lira] values . . . . Therefore, no unnecessary currency conversion occurred." *Habaş,* 2023 WL 5985777, at *4 (alteration in original) (internal quotation marks and citations omitted).

## IV

We have considered Habaş's remaining arguments and find them unpersuasive. Because Commerce's use of lira-denominated prices to value Habaş's home-market sales is lawful and supported by substantial evidence, we affirm the Trade Court's decision sustaining Commerce's final determination.

**AFFIRMED**